**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

ANGELA R. COX-GRAHAM,              )
                                  )
                    Plaintiff,    )
                                  )
v.                                )    Case No. CIV-15-453-RAW-KEW
                                  )
NANCY A. BERRYHILL, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
                    Defendant.    )

## REPORT AND RECOMMENDATION

Plaintiff Angela R. Cox-Graham (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 5, 1962 and was 52 years old at the time of the ALJ's latest decision. Claimant completed her high school education. Claimant has worked in the past as a grocery checker and sacker, convenience store cashier, and manager at McDonald's. Claimant alleges an inability to work beginning April 20, 2012 due to limitations resulting from pain in the head, back, arms, legs, and feet, anxiety, numbness and tingling on the right

side after a stroke, and concentration and memory problems.

## Procedural History

On April 28, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an Administrative Law Judge ("ALJ") conducted a hearing, he issued an unfavorable decision on January 4, 2011 which was subsequently reversed by this Court and remanded for further proceedings to consider new and material evidence presented after the hearing.

Claimant then filed a Title II application for widow's benefits on September 18, 2012 and an application for Title XVI benefits on September 14, 2012. The Appeals Council directed that the ALJ combine the subsequent claims with the prior claims remanded on appeal and issue a new decision. After a second administrative hearing, an ALJ issued a second unfavorable decision. The Appeals Council, however, found that the ALJ had failed to follow their directive to combine the claims and remanded the case with instructions.

On May 26, 2015, a third administrative hearing was conducted by ALJ Deborah L. Rose by video with Claimant appearing in Fort

Smith, Arkansas and the ALJ presiding in Tulsa, Oklahoma. On July 31, 2015, the ALJ issued a third unfavorable decision. Claimant did not seek review by the Appeals Council and, therefore, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she retained the RFC to perform a reduced range of light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) reaching an improper RFC by failing to properly evaluate the opinion evidence; and (2) making inadequate findings at step five in light of the faulty RFC.

## Consideration of the Medical Opinion Evidence

In her decision, the ALJ determined Claimant suffered from the severe impairments of hypertension with residuals of cerebral vascular accident ("CVA") with right-sided weakness and paresthesias, sciatica, adjustment disorder, anxiety disorder, and mild vascular dementia. (Tr. 17). The ALJ concluded that Claimant retained the RFC to perform a reduced range of light work. In so

doing, she found Claimant could lift/carry and/or push/pull ten pounds frequently and 20 pounds occasionally, could stand and/or walk for six hours in an eight hour workday, sit for six hours in an eight hour workday, could understand, remember, and carry out simple instructions, and make simple decisions.  She could have superficial and incidental work-related interaction with co-workers and supervisors, but not with the public.  (Tr. 20-21).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of small product assembler, electrical accessories assembler, and bakery worker, all of which were found to exist in sufficient numbers in both the regional and national economies.  (Tr. 33).  As a result, the ALJ found Claimant was not disabled from February 1, 2007 through the date of the decision. (Tr. 34).

Claimant contends the ALJ improperly weighed the opinion evidence in the record and reached an unsupported RFC as a result. Specifically, Claimant contends the ALJ failed to properly evaluate and weigh the opinions of consultative examiners Dr. Patricia J. Walz and Dr. Robert Spray and, instead, gave greater weight to the opinions of non-examining medical consultants.  On January 23, 2007 and again on July 21, 2009, Claimant underwent a mental diagnostic evaluations by Dr. Walz.  In the first examination, Dr. Walz found Claimant's "concentration and memory impairment would interfere with

her ability to function well." She would require supervision. She also had a "little bit of an impairment in language skills". While Claimant could sustain activities physically, she might lose her concentration and be easily distracted. (Tr. 288). Claimant would work more slowly after her stroke than she had in the past. Dr. Walz also found Claimant could not manage her own funds. Her effort was good and she was not malingering. (Tr. 289). Dr. Walz estimated Claimant's GAF at 55-60 with borderline to low average intellectual functioning. (Tr. 288).

At the second evaluation, Dr. Walz determined Claimant again had borderline to low average intelligence. (Tr. 343). She found Claimant's social skills were impaired by her sad demeanor and constant sobbing. Her intellectual functioning was thought to be in the low 70's. With her cognitive issues, Dr. Walz found Claimant would have difficulty understanding and retaining complex information. She had problems with sustained concentration and was easily side tracked. Her speed of information processing was slow. Dr. Walz diagnosed Claimant with vascular dementia with anxiety and depression, mild to moderate with an estimated GAF of 45-50. (Tr. 807).

The ALJ gave Dr. Walz's opinions "little weight." His basis for doing so included (1) they were not supported by the longitudinal medical evidence or Dr. Walz's findings; (2) during the

assessment, Claimant reported no problems with arithmetic; (3) Claimant was able to manage money on-the-job since her stroke without issue; (4) no unusual thought processes; (5) Claimant was fully oriented as to time and place; (6) she dressed in clean clothes; (7) she denied hallucinations; and (8) she maintained only sporadic psychological services on an outpatient basis. He then concludes by stating, "I find that Dr. Walz's examination support simple repetitive task with only superficial contact with co-workers and no contact with the public." (Tr. 29).

The ALJ must evaluate every medical opinion in the record, and he will consider several factors in deciding the weight that should be given to any medical opinion. Salazar v. Barnhart, 468 F.3d 615, 625-626 (10th Cir. 2006)(citing 20 C.F.R. § 416.927(d)). In evaluating medical opinions, the ALJ must accord each opinion the proper weight on the basis of: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist. Id. at 626. *See also* Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ must give good reasons for the

weight assigned to a medical opinion and set forth specific, legitimate reasons for rejecting an opinion of an acceptable treating source.  <u>Watkins</u>, 350 F.3d at 1300-1301.

The ALJ's evaluation of Dr. Walz's opinions is curious.  He first expressly affords the opinions "little weight" then concludes that the findings support his RFC assessment.  Moreover, he ostensibly cites to various aspects of the examination which have little or no bearing upon Dr. Walz's conclusions on Claimant's mental status.  Whether she lacks delusions has little relevancy to her inability to concentrate or maintain her attention.  In essence, the ALJ rejected the findings of a mental health professional who had the benefit of two evaluations in favor of his own perceptions. He does not cite to any specific countervailing evidence in the record representing the "longitudinal medical evidence."  In short, the ALJ's rejection of Dr. Walz's opinion is not supported by substantial evidence or justified by his reasoning.  On remand, the ALJ shall re-evaluate Dr. Walz's opinions and make any necessary modifications to his RFC findings.

Claimant also challenges the ALJ's consideration and rejection of Dr. Robert Spray's opinion.  Dr. Spray examined Claimant on March 6, 2006 and again on November 15, 2012.  He found Claimant had difficulty with calculations.  He diagnosed her with adjustment

disorder with depressed mood and vascular dementia, mild. (Tr.
255). He found no marked limitations in concentration, persistence,
or pace during the interview. He noted that she may have lost some
degree of cognitive functioning since her stroke, but she was not
mentally retarded. (Tr. 256).

On January 4, 2011, Dr. Spray completed an RFC mental
functioning form. He determined Claimant was "severe" in her
limitations in the areas of understanding detailed or complex
instructions, remembering detailed or complex instructions, carrying
out detailed or complex instructions, avoiding undue constriction
of interests, demonstrating reliability, and behaving in an
emotionally stable manner. Her limitation in functioning was
"marked" in the areas of relating to co-workers, interacting with
supervisors, dealing with work stresses, functioning independently,
maintaining attention for extended periods of time, performing
activities within a schedule, maintaining regular attendance,
sustaining an ordinary routine without special supervision, working
in coordination or proximity to others without being distracted by
them, completing a normal workday, completing a normal workweek,
performing at a consistent pace, performing without an unreasonable
number or length of rest periods, responding and adjusting to the
use of new and unfamiliar tools and/or machines, accepting
instructions and responding appropriately to criticism from

supervisors, and getting along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 417-19).

On November 15, 2012, Dr. Spray performed a mental diagnostic evaluation on Claimant. She was sad and tearful with a labile affect. Her thoughts were logical, relevant, and goal directed. She was oriented as to time and place. Dr. Spray diagnosed her with major depression, recurrent and anxiety disorder, NOS with a GAF of 40-50. She reported no difficulty with self-care. She was able to communicate adequately. She demonstrated mild difficulty with attention and concentration. She persisted well and her pace was normal. She was not malingering and could manage her funds. (Tr. 1010-13).

The ALJ gave Dr. Spray's functional evaluation "little weight." He reasoned that the limitations found did not find support in his evaluations. The ALJ primarily concluded that Dr. Spray relied upon Claimant's subjective complaints to reach his functional conclusions. (Tr. 31-32).

"[T]he fact that a medical source relies on a plaintiff's subjective reports of her symptoms provides no basis for discrediting a medical opinion." Gonzales v. Colvin, 69 F. Supp. 3d 1163, 1170-71 (D. Colo. 2014) citing Nieto v. Heckler, 750 F.2d 59, 60-61 (10th Cir. 1984); Gutierrez v. Astrue, 2008 WL 5246300,

at 4 (D.Colo. Dec. 15, 2008). "The ALJ's own disbelief of plaintiff's subjective complaints provides no basis on which to discredit an otherwise valid medical source opinion, since the ALJ may not substitute his lay opinion on the effect of medical findings for that of a medical professional." Id. citing Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004); McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.").

Moreover, the ALJ appears to require each finding as to functional limitation on the RFC form to correlate to a specific finding in Dr. Spray's evaluations. It is apparent between the evaluations Claimant developed further problems with concentration. This finding was consistent with Dr. Walz's examinations. On remand, the ALJ should consider these restrictions in re-evaluating the accuracy of Dr. Spray's findings and his RFC assessment.

Claimant also contends the ALJ improperly evaluated her credibility. Since the ALJ's decision in this matter, the Social Security Administration has revised its rulings on evaluating statements related to the intensity, persistence, and limiting

effects of symptoms in disability claims - what heretofore has been known as "credibility" assessments. Soc. Sec. R. 16-3p, 2106 WL 1119029 (March 16, 2016), superceding Soc. Sec. R. 96-7p, 1996 WL 374186 (July 2, 1996). On remand, the ALJ shall apply the new guidelines under Soc. Sec. R. 16-3p in evaluating Claimant's testimony regarding "subjective symptoms".

## Step Five Evaluation

Claimant contends that ALJ's hypothetical questioning of the vocational expert did not mirror her functional limitations since the RFC did not reflect all of her restrictions. Since the ALJ must re-evaluate the opinion evidence and Claimant's credibility and his RFC, he should reassess his questioning to the vocational expert on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections,

with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE